MARC E. JOHNSON, Judge.
| gThe State of Louisiana appeals the granting of a Motion to Quash Predicates in favor of Defendant, Erlich Joel Rosales, for two prior DWI convictions in the 24th Judicial District Court, Division “P”. For *39 the following reasons, we reverse and remand for further proceedings.

STATEMENT OF THE CASE

On June 17, 2010, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Erlich Joel Rosales, with driving while intoxicated (DWI), third offense, in violation of LSA-R.S. 14:98. The bill of information alleged that Defendant had two prior convictions for DWI. The first predicate alleged was on June 12, 2003, in case number F1436651 in First Parish Court, Division “B,” in Jefferson Parish. The second predicate alleged was on March 3, 2009, in case number 539311 in the 29th Judicial District Court, Division |S“E,” in St. Charles Parish. Although Defendant did not appear at the arraignment on June 30, 2010, a plea in absentia of not guilty was entered on his behalf.[1]
Thereafter, on September 24, 2010, Defendant filed a “Motion to Quash Predicates with Memorandum.” On September 29, 2010, a hearing was held on the motion to quash.[2] On December 1, 2010, Defendant’s motion to quash was granted, and the State orally moved for an appeal.[3] On December 8, 2010, the State filed a written motion for appeal, which was granted on the same date. The State’s appeal follows. FACTS
The bill of information was quashed in this matter, and therefore, the case did not proceed to trial. Nevertheless, the facts are not at issue.

ASSIGNMENT OF ERROR

The State’s sole assignment of error asserts the trial court erroneously granted Defendant’s Motion to Quash the Predicates.

DISCUSSION

The State argues Defendant did not meet his burden under State v. Carlos, 98-1366 (La.7/7/99); 738 So.2d 556, by failing to produce affirmative evidence for either predicate plea that he suffered an infringement of his Boykin[4] rights because he did not understand the English language and he was not advised of potential deportation consequences by the court or his attorneys. The State asserts that neither alleged deficiency is a constitutional violation that would render his predicate pleas unconstitutional for purposes of enhancement. The State argues 14that the transcript shows that Felix Reyes was present to translate for the first predicate; defense counsel admitted that he represented Defendant in the second predicate; and that a translator was present at the time of the plea. Further, the State argues that Padilla v. Kentucky[5] does not apply in the instant proceeding as a collateral attack on a predicate plea. The State argues Defendant was not at risk of deportation, and even if the Defendant could prove that he *40 was not advised of the potential deportation consequences, he cannot prove he was prejudiced. The State concludes that Defendant’s predicate pleas were knowing and voluntary and were taken in conformity with the procedural safeguards set forth in Boykin v. Alabama, and later codified in LSA-C.Cr.P. arts. 556 and 556.1.
Defendant responds that he has a very limited understanding of the English language and was not granted the full range and force of his constitutional rights because his Boykin rights, the consequences of any future DWI convictions, and the deportation consequences of his pleas were inadequately explained to him. Defendant argues that the State presents its opinion about his ability to understand English, noting that his apparent ability at the hearing in September of 2010 cannot be used to judge his ability at the time of his predicate convictions in 2003 and 2009. Defendant contends there is an indication that a translator was present for the first predicate plea, but there is no information regarding his qualifications and competency. He further suggests that there is no evidence that the waiver of rights form was translated to him, noting that the cer-tifícate at the end of the form is incomplete. Defendant argues there is no signed waiver of rights form for the second predicate plea, and the transcript does not show a translator was present. Further, Defendant contends he was not made aware of the enhanced penalties of a third offense in neither of the proceedings, nor was he notified of any possible 1 immigration consequences of his guilty plea to a third offense. Finally, Defendant argues that for the second predicate, the District Attorney in St. Charles Parish agreed that the first conviction was inadequate and Defendant pleaded to a first offense, instead of a second offense.[6]
In the instant proceedings, Defendant filed a motion to quash the predicates, arguing that he was a “non-national” with a limited understanding of the English language. He argued that he did not have a translator present in either.of the predicate proceedings to explain to him the repercussions of his plea. He further claimed that he was not notified in either case of the immigration consequences that the predicates would initialize. Defendant filed a memorandum in support of his motion. In the memorandum, he argued that his pleas were not made with the full knowledge of his rights and the nature of the charges against him as required by LSA-C.Cr.P. art. 556. He argued that a translator was present for the proceeding for the first offense, but the waiver of rights form, which he signed on June 12, 2003, does not reflect that the form was translated for him. He further argued that the certification was incomplete and undated. As for the second offense, Defendant argued that there was no signed waiver, and the March 3, 2009 transcript shows no evidence that a translator was present to assist him. He argued that, in both cases, he was not made aware of the consequences of his enhanced penalties that could come into play with a third offense, nor was he informed of possible immigration consequences of the guilty pleas, citing Padilla v. Kentucky, supra. Defendant argued because of his limited English proficiency at the time of the predicates, the aid of an interpreter was essential in ensuring he understood his rights and the consequences of the pleas. He argued that there was “at least significant doubt with respect to whether the *41 defendant was made fully aware of | fithat information through the use of an interpreter.” He argues that the pleas were made without his full understanding of the proceedings against him in violation of LSA-C.Cr.P. art. 25.1(A).[7]
On September 29, 2010, a hearing was conducted on the motion to quash. Defense counsel argued that, when he was charged in St. Charles Parish, Defendant was not charged with a second offense because the District Attorney indicated he felt the predicate from First Parish Court was not sufficient. However, he recognized the record was silent as to this. He further argued that the trial judge only discussed the enhanced second offense and did not go any further. Counsel also argued neither he nor the court advised Defendant of the immigration consequences he faced if he pleaded to an offense that resulted in a sentence of greater than one year.
The State responded by arguing that it was Defendant’s burden of proof, and that there was no evidence that Defendant was a “non-national.” The State introduced two exhibits into evidence. State’s Exhibit 1 involved the predicate from Division “B” in case number F1436651. The State noted that page two reflected that Felix Reyes acted as an interpreter on June 12, 2003. The State also pointed out that the transcript showed that Defendant was answering questions, suggesting that he obviously understood the English language. The State also presented State’s Exhibit 2, which involved the second predicate, case number 539311. The State argued that for this predicate, Defendant had an attorney who claimed he went over everything with him and acknowledged that Defendant understood. Again, the State contends that the transcript suggests that Defendant was able to answer questions. The State argued that both exhibits demonstrated 17that Defendant knew what was occurring during the proceedings. The State also claimed the Padilla argument was irrelevant, noting that the case stemmed from a deportation proceeding. The State argued that he could not be deported for the two misdemeanor convictions, and that Defendant suffered no prejudice because he had not been deported. The State further argued that the scope of Boykin had not been expanded beyond the right to a trial by jury, the right to confrontation, and the privilege against self-incrimination.
After the State submitted its argument at the hearing, an interpreter (Jeannette Zapata) was sworn in for Defendant’s testimony. Defendant was asked if he understood the English language, and he responded, “Not too much.” He explained that Ms. Zapata was always present when he discussed things with his counsel and was present in St. Charles Parish when he answered the judge’s questions. He also testified that he had been in this country for 13 years and was a permanent resident in the United States. He said that on that day he had discussed the immigration problems he faced if he was sentenced to more than one year. Defendant testified that he had a translator in First Parish Court for his predicate, but that the translator did not correctly translate what was going on.
During Defendant’s testimony at the hearing, the trial judge interrupted and said the following, “[w]ait one second. If *42 he can answer the questions in English, why do we need her? He’s answering the questions before she can ever interpret to you.” Defense counsel said, “[w]ell, I want to make sure — [.]” The judge interrupted again by stating,
Well, if he can answer — ma’am, I’m getting ready to let you have a seat. If he can answer the questions, we don’t need to go through all of this. Have a seat, ma’am. If he can answer the questions, let him answer the questions. We’re wasting time here with this.
| ^Defendant then testified that he was from Honduras.
Defense counsel ceased in his questioning of Defendant and, instead, made further arguments to the court. He claimed that his argument regarding deportation was not a collateral issue, but became a substantial right because of the serious repercussions. Counsel argued that this should have been explained to Defendant. The State responded that the “transcripts speak for themselves.” The court noted that the matter was submitted and would be taken under advisement. Thereafter, on December 1, 2010, the trial court granted Defendant’s motion to quash, without giving reasons.
A presumption of regularity attaches to prior convictions in habitual offender DWI cases. State v. Collins, 04-255, p. 5 (La.App. 5 Cir. 10/12/04); 886 So.2d 1149, 1153, writ denied, 04-2798 (La.3/11/05); 896 So.2d 62. In State v. Balsano, 09-0735, p. 8 (La.6/19/09); 11 So.3d 475, 479 (per curiam), the Louisiana Supreme Court recognized that it has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings under LSA-R.S. 15:529.1, State v. Shelton, 621 So.2d 769, 774-80 (La.1993), or in habitual offender D.W.I. prosecutions, State v. Carlos, 98-1366 (La.7/7/99); 738 So.2d 556. This line of jurisprudence sets forth the respective burdens of proof when a defendant challenges the use of a predicate conviction for enhancement under the recidivist habitual offender and driving while intoxicated statutes. Furthermore, this Court recognizes a motion to quash is the proper vehicle to challenge the constitutional validity of a prior DWI guilty plea. See State v. Lowry, 00-107, pp. 3-4 (La.App. 5 Cir. 6/27/00); 762 So.2d 1275,1277.
The Louisiana Supreme Court’s decision in Carlos established a three-step analysis for determining the validity of prior DWI guilty pleas for use in enhanced |3PWI proceedings. Balsano, supra. Adopting the Court’s prior opinion in Shelton, and acknowledging the presumption of regularity that attaches to prior final convictions, Carlos placed on the State the initial burden of proving the existence of the prior guilty pleas, and that the defendant was represented by counsel when the pleas were taken. Balsano, supra (citing Carlos, 98-1366; 738 So.2d at 559). If the State meets this initial burden, “the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.” Balsano, supra (quoting Carlos, 98-1366; 738 So.2d at 559). If the defendant makes the required showing, the burden reverts to the State to produce a “perfect” Boykin transcript, i.e., one “which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.” Id. (quoting Carlos, 98-1366; 738 So.2d at 559, n. 4 and Shelton, 621 So.2d at 775, n. 12). Anything less than a perfect transcript, “such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant’s Boykin rights were prejudiced.” Balsano, supra *43 (quoting Carlos, 98-1366; 738 So.2d at 559).
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. State v. Davis, 03-488, p. 7 (La.App. 5 Cir. 11/12/03); 861 So.2d 638, 642, writ denied, 03-3401 (La.4/2/04), 869 So.2d 874. Because a plea of guilty waives these fundamental rights of an accused, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. Galliano, 396 So.2d 1288, 1290 (La.1981).
| ipThe Balsano court explained that Carlos spoke more broadly about the prejudice to Boykin rights because prior DWI convictions used to enhance sentence in many cases, if not most, are misdemeanor offenses as to which the defendant does not have the right to a jury trial, shrinking the three-right rule to two rights. Balsa-no, 09-0735 at 9; 11 So.3d at 479-80.
Whenever a misdemeanor guilty plea is to be used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, it is incumbent upon the trial judge to inform the defendant that by pleading guilty he waives these enumerated constitutional rights. State v. Vu, 02-1243 (La.App. 5 Cir. 4/8/03); 846 So.2d 67, 71. The trial judge must also ascertain that the accused understands what the plea connotes and its consequences. “While it is preferable for the trial judge to conduct a colloquy to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.” Id.
In the present case, Defendant challenged the constitutionality of his two predicate DWI guilty pleas. As such, under this line of jurisprudence, the State had the initial burden of showing the existence of the guilty plea, and that Defendant was represented by counsel when the plea was entered.
For the first predicate, case number F1436651 from First Parish Court, the State presented minute entries, a waiver of rights form, and a commitment reflecting the guilty plea. As such, the State met the first prong of its initial burden by providing proof of the existence of the predicate guilty pleas. However, it appears that defendant was not represented by counsel at the time he pleaded guilty to this offense. The waiver of rights form reflects the word “None” by the signature line for counsel. Further, Defendant produced the June 12, 20031 ^transcript of the guilty plea, which reflects Defendant was “IN-PROPER PERSON.”
Defendant had a right to counsel at the time of his predicate plea. Regardless of whether imprisonment is actually imposed, Article 1, Section 13 of the Louisiana Constitution guarantees a defendant the right to counsel in any case punishable by a term of imprisonment. State v. Wise, 04-1445, p. 3 (La.App. 5 Cir. 5/31/05); 905 So.2d 387, 390. A defendant has the right to counsel under the Sixth Amendment of the United States Constitution only where a sentence of imprisonment is imposed. Id. A sentence of imprisonment includes a suspended sentence in which the defendant is placed on probation. Id. In this case, Defendant received a sentence for his predicate plea that included imprisonment, which was suspend *44 ed. Defendant was placed on active probation. As such, Defendant was entitled to counsel. The right to counsel is a fundamental right guaranteed by the state and federal constitutions. State v. Rodrigue, 01-377 p. 6 (La.App. 5 Cir. 8/28/01); 795 So.2d 488, 493. Once informed of the right to counsel, however, an accused may intentionally waive the right. Id.
Because the predicate plea was uncounseled, the State had the burden of proving a valid waiver of counsel. An uncounseled misdemeanor conviction, absent a valid waiver of counsel, may not serve as a predicate for enhancement of a subsequent DWI offense. State v. Bush, 03-1438, p. 4 (La.App. 5 Cir. 4/27/04); 873 So.2d 795, 798. The State bears the burden of proving that an unrepresented defendant knowingly and intelligently waived his right to counsel before pleading guilty to a predicate misdemeanor DWI that is used to enhance a subsequent DWI offense. Id. The determination of the validity of the accused’s waiver of counsel rests on the totality of the circumstances in each case. Id.
| lgBefore accepting a misdemeanor guilty plea, the trial judge should expressly advise the defendant of his right to counsel and to appointed counsel if he is indigent. Rodrigue, 01-377 at 6; 795 So.2d at 493. The trial judge should determine if the waiver is knowing and intelligent under the circumstances. Id. In determining the knowing and intelligent nature of the waiver of right to counsel, the trial judge should consider such factors as the age, education, experience, background, competency and conduct of the accused as well as the gravity of the offense. Id. Whether an accused has made a knowing and intelligent waiver of his right to counsel is a question which depends upon the facts and circumstances of each case. Id. (citing State v. Strain, 585 So.2d 540, 542 (La.1991)). The critical issue on review of the waiver of rights is whether the defendant understood the waiver. State v. Nabak, 03-919, pp. 5-6 (La.App. 5 Cir. 12/30/03); 864 So.2d 758, 762.
In Strain, 585 So.2d at 542, the Louisiana Supreme Court explained that in accepting a waiver of counsel at trial, the trial judge should advise the accused of the nature of the charges and the penalty range, should inquire into the accused’s age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. In State v. Stevison, 97-3122 (La.10/30/98); 721 So.2d 843, 844-45 (per curiam), the Louisiana Supreme Court stated that Strain, supra, did not establish inflexible criteria or a magic word formula for determining the voluntariness of a waiver.
In State v. Simmons, 05-1462, pp. 1-2 (La.3/17/06); 924 So.2d 137, 138 (per curiam), the Louisiana Supreme Court emphasized that Strain did not establish rigid criteria for determining the voluntariness of a plea in misdemeanor cases and an accompanying waiver of counsel. This is because a trial judge who personally | TSaddresses the accused during the colloquy is in a position to assess the extent of inquiry necessary to determine the knowing, intelligent, and voluntary nature of the waiver of counsel' as well as of the guilty plea. Id.
In the present case, the waiver of rights form reflects that Defendant was advised that he had a right to have an attorney present at every stage of the proceeding, and if Defendant was unable to financially employ counsel, one would be appointed to represent him. The form further informed Defendant of his right to *45 counsel at trial and to be appointed counsel if he could not afford to hire counsel. Defendant signed this form. Further, Defendant received a benefit by pleading, in that he pleaded guilty pursuant to LSA-C.Cr.P. art. 894. In fact, the minute entries show that, when Defendant completed his probation, his conviction was set aside, and his case was dismissed.[8] The statement regarding counsel was not limited to representation at trial, especially because the form later included a statement about trial representation. Further, Defendant was specifically told by means of the form that he had a right to counsel at every stage of the proceedings.[9] Further, the transcript of the colloquy reflects that the judge advised Defendant that he had a right to be represented by an attorney, and if he could not afford one then an attorney would be appointed to represent him. Defendant acknowledged his right.
The transcript from this predicate plea reflects that the judge confirmed with Defendant that he wished to plead guilty to driving while intoxicated. Defendant was told of his right to go to trial and, if convicted, his right to appeal the judge’s decision. He was further told that he had a right to cross-examination and a privilege against self-incrimination. Defendant indicated that he understood these | urights. Defendant denied that he had been forced to plead guilty. Defendant agreed that he was pleading guilty because he in fact was driving while intoxicated on May 19, 2002. The judge then went on to explain to Defendant that, if he was charged with another offense within the next ten years, it would be considered a second offense. He also informed him of the possible sentence for a second offense. Defendant indicated that he still wanted to plead guilty. The judge found that Defendant made a knowing and intelligent, free and voluntary act of pleading guilty and accepted his plea under the provisions of LSA-C.Cr.P. art. 894(B). Defendant was then sentenced.
The minute entries and the waiver of rights form indicate that Defendant was informed of his Boykin rights. The waiver of rights form reflects that Defendant was informed that he had a right to a trial by judge and if convicted could appeal, that he had a right of cross-examination, and the privilege against self-incrimination. He was also told that by pleading guilty under Article 894 he was waiving all of those rights. The form explained the potential penalties for first offenses, second offenses, third offenses, and fourth or subsequent offenses. The form explained that the current conviction could be used against him in the future to enhance or increase the sentence or penalties for any subsequent convictions of driving while intoxicated. The form further reflected that, if Defendant elected to have a trial, he had a right to have competent counsel represent him at trial, and if he was unable to pay for counsel one would be appointed to represent him. Defendant signed the form, indicating that he was fully satisfied with the way the court handled his case, *46 and that no promises had been made to him in connection with the plea. Defendant’s date of, birth and social security-number was included on the form. Defendant signed the certifícate on the form, which stated that the rights had been read and explained to him to his full satisfaction and that he had no 11fifurther questions to ask concerning his rights. Defendant failed to date the certificate or fill in the blank to identify who had read and explained his rights to him.
The evidence presented does not include any indication of Defendant’s education, and the transcript does not include any discussion regarding Defendant’s mental condition or specific inquiries about Defendant’s understanding of his waiver of counsel. However, the determination of whether a Defendant understood his waiver of counsel prior to pleading guilty to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial. State v. Kerwin, 02-103, p. 5 (La.App. 5 Cir. 5/15/02); 821 So.2d 28, 31. The Louisiana Supreme Court has recognized that crimes of driving while intoxicated are non-complex crimes, and are almost self-explanatory, thus requiring less judicial inquiry to determine if defendant understood his waiver of counsel in the case of a guilty plea. See Nabak, 03-919; 864 So.2d at 762. See also State v. Theriot, 00-870, pp. 2-13 (La.App. 5 Cir. 1/30/01); 782 So.2d 1078, 1084, where this Court recognized that the judge did not make an inquiry into the defendant’s background and competency. However, this Court determined that in light of the totality of the circumstances, there was a valid waiver of counsel.
In the present case, the judge granted Defendant’s motion to quash, without reasons and without addressing whether he believed there was a valid waiver of counsel. Defendant did not challenge the waiver of counsel in his motion to quash and does not raise such an issue on appeal.
Nevertheless, as recognized by the jurisprudence, Defendant pleaded to uncomplicated, misdemeanor offenses. The record reflects that Defendant did not ask questions during the proceedings. See Theriot, 00-870, 782 So.2d at 1085, 11fiwhere this Court, in determining the validity of a waiver of counsel, considered that the defendant signed a waiver of rights form acknowledging his right to ask questions, and the transcript of the plea indicated that the defendant did not ask questions or hesitate in pleading guilty. Further in the present case, Defendant received the benefit of pleading under LSA-C.Cr.P. art. 894, a factor considered relevant by this Court in Theriot, supra. Further, the transcript reflects that the clerk mentioned that other charges would be dismissed.
The trial judge for the first predicate concluded that there was no need to inquire further to establish the knowing, intelligent, and voluntary nature of the waiver of counsel. The trial judge was in the position to assess the extent of the inquiry necessary to determine the knowing, intelligent, and voluntary nature of the waiver of counsel. See State v. Clement, 08-296, pp. 12-13 (La.App. 5 Cir. 11/25/08); 1 So.3d 547, 554, writ denied, 08-2989 (La.10/16/09); 19 So.3d 468.' Under these circumstances, we find that the State met its burden of showing the knowing, intelligent, and voluntary nature of the waiver of counsel under the totality of the circumstances. The burden then shifted to Defendant to make an affirmative showing of an infringement of his rights or a procedural irregularity in the taking of the first predicate plea.
In the second predicate plea, case number 539311, from the 29th Judicial District Court, the State presented a transcript of *47 the guilty plea colloquy. As such, the State presented proof of the existence of the predicate guilty plea. Further, the transcript reflects that Defendant was represented by counsel. As such, the burden shifted to Defendant to produce an affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the predicate plea.
Defendant sought to meet this burden as to both predicates by making two arguments. First, he argues that he was a “non-national” and had difficulty | ^understanding English. Second, Defendant argues that he was not informed of the possible immigration consequences of the guilty pleas. He argues that his pleas were not made with the full knowledge of his rights and of the nature of the charges against him as required by LSA-C.Cr.P. art. 556.
LSA-C.Cr.P. art. 556 provides the following:
A. Except as otherwise provided in Paragraph B of this Article or in R.S. 32:57 or in any other applicable law, in a misdemeanor case, if the defendant is not represented by counsel of record, the court shall not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary and is made with an understanding of the nature of the charge and of his right to be represented by counsel.
B. In a misdemeanor case in which the court determines that a sentence of imprisonment will actually be imposed or in which the conviction can be used to enhance the grade or statutory penalty for a subsequent offense, the court shall not accept a plea of guilty or nolo con-tendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
(3) That he has the right to have a trial, and if the maximum penalty provided for the offense exceeds imprisonment for six months or a fine of one thousand dollars, a right to trial by a jury or by the court, at his option.
(4) At that trial he has the right to confront and cross-examine witnesses against him and the right not to be compelled to incriminate himself.
(5) That if he pleads guilty or nolo con-tendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
C.The court shall require either:
UP That a verbatim record of the proceedings at which the defendant enters a plea be made.
(2) That a form reflecting the court’s advice to the defendant and the court’s inquiry into the voluntariness of the plea be signed by the court and the defendant and filed in the record at the time of the plea.
D.Any variance from the procedures required by this Article which does not affect substantial rights of the defendant shall not invalidate the plea.
Defendant failed to show that any alleged violation of LSA-C.Cr.P. art. 556 affected his substantial rights. Defendant claimed that his immigration status would *48 be affected if he faced deportation for imposition of a sentence that was greater than one year. He argued that he should have been advised of this during the proceedings for his predicate convictions. The predicate convictions did not involve sentences over one year. Even if Defendant was not told of the effect that a future conviction would have on his immigration status, the record does not reflect that Defendant was involved in any deportation proceedings. At the motion to quash hearing, he testified that he was a permanent U.S. resident.
Further, Defendant cited Padilla v. Kentucky, — U.S. —, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) in support of his argument. However, this case, which was only recently decided in 2010, involved post-conviction relief proceedings. The Padilla court held that defense counsel engaged in deficient performance by failing to advise defendant that his plea of guilty made him subject to automatic deportation. This case abrogated State v. Montalban, 00-2739 (La.2/26/02); 810
So.2d 1106, cert, denied, 537 U.S. 887, 123 S.Ct. 132, 154 L.Ed.2d 148 (2002), which had held that defendant’s possible deportation, based on his conviction for a felony, was a “collateral consequence” of his guilty plea, and thus, defense counsel was not required to explain the possibility of deportation to defendant to insure that his guilty plea was free and voluntary.
[ ¶ ¡Defendant is attempting to make arguments regarding his predicate proceedings that should have been raised as a post-conviction relief claim, directly in those predicate cases. Defendant should have raised an ineffective assistance of counsel claim in the predicate in which he was represented. The prescriptive periods for doing so with these predicate convictions have expired, and none of the exceptions to prescription are applicable. See, LSA-C.Cr.P. art. 930.8.
In addition, after reviewing the transcripts of both predicate proceedings, there is no indication that Defendant did not understand the proceedings. The transcripts do not reflect any demonstration of difficulty in understanding English or any of the proceedings. Nevertheless, there was a translator available at both predicate proceedings. The evidence submitted for the first predicate conviction indicates that a translator was present. The minute entries in State’s Exhibit 1 and the transcript in Defendant’s Exhibit 1 show an interpreter was present. Further, Defendant testified at the motion to quash proceeding that a translator was present at the second predicate proceeding in St. Charles Parish. The transcript of the motion to quash proceeding also suggests that Defendant understood the English language. The judge at this proceeding had the interpreter take a seat after realizing that Defendant was interpreting and answering questions before the interpreter had time to speak, apparently believing that the interpreter was unnecessary.
Further, Defendant argues that -he was not advised previously of the enhanced penalties of a third offense. However, the waiver of rights form executed in the first predicate conviction reflects an advisal of potential penalties for third and subsequent offenses, and defendant signed this form. There is no evidence that Defendant did not understand these consequences.
120Pefendant failed to meet his burden of making an affirmative showing of an infringement of his rights or a procedural irregularity in the taking of the predicate pleas. As such, the burden never returned to the State. Nevertheless, we find that the State did produce a “per- *49 feet Boykin transcript” for the second predicate, which reflected a voluntary, informed, and articulated waiver of the Boy-kin rights. The State presented State’s Exhibit 2, which included the March 3, 2009 transcript, reflecting Defendant’s guilty plea to a first offense DWI. Defendant was represented, and his counsel explained that he had gone over the Boykin form with Defendant. The State described the agreement as to sentencing, and Defendant confirmed the agreement. Defendant was questioned by the court, and Defendant responded to the court’s questions. Defendant gave his name and address and agreed that he understood that he was giving up his right to a trial by a judge and a right to be represented by an attorney, who would be required to represent him at trial, and that one would be appointed if he could not afford one. He was also told that he had a right to confrontation and a privilege against self-incrimination. Defendant agreed that he ■understood this. Defendant was advised of the penalty he faced for the first offense and was informed that the offense could be enhanced. Defendant indicated that he understood this. Defendant agreed that he was guilty, and that he had not been forced, threatened, or intimidated into making the plea. The court found a factual basis for the plea and accepted the plea as freely, knowingly, and voluntarily made. Defendant was sentenced, and when asked if he had any questions, Defendant responded that he did not.
For the first predicate, the State presented a minute entry and a waiver of rights form that reflected the waiver of Defendant’s Boykin rights. It appears from the motion to quash transcript that the defense produced the transcript of the first predicate at the beginning of the hearing. Nevertheless, even if the State had not |21 produced a “perfect Boykin transcript,” the judge would have had to weigh the evidence submitted by both sides and determine whether the Boykin rights were prejudiced. In the present case, the record does not suggest that Defendant’s Boykin rights were prejudiced.
The two predicate convictions were not constitutionally infirm and could be used for enhancement purposes. As such, we find the trial judge erred by granting defendant’s motion to quash. Accordingly, the trial court’s granting of the motion to quash is reversed.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveawc, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (LaApp. 5 Cir.1990). The review reveals no errors patent in this case.
DECREE
The trial court’s granting of Defendant’s Motion to Quash Predicates is reversed. The matter is remanded for further proceedings.

REVERSED AND REMANDED

. A “Motion, Affidavit and Order to Waive Defendant’s Presence at Arraignment” is included in the record. An order was signed, allowing Defendant to waive his presence and appear through counsel.

. It appears from the record's index that the September 29, 2010 minute entry was a nunc pro tunc entry, although not marked as such. Page 3 of the record includes a September 27, 2010 minute entry that appears identical to that of the September 29th entry. The June 22, 2011 letter included in the record reflects that the court reporter was unable to locate any proceedings on September 27, 2010.

. The December 1, 2010 minute entry reflects that the State would take a "writ” to the Fifth Circuit, and the return date for the “appeal” was January 25, 2011. The transcript reflects that the State gave its intent to take an appeal, and the judge gave the State 30 days from December 1, 2010, to do so.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. Padilla v. Kentucky,-U.S.-, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

. We note that there is no evidence of these discussions regarding the inadequacy in the transcript presented at the hearing.

. It is noted that this article was added by Acts 2008, No. 882, § 2. Subsection A provides the following: "If a non-English-speaking person who is a principal party in interest ... has requested an interpreter, a judge shall appoint, after consultation with the non-English-speaking person or his attorney, a competent interpreter to interpret or to translate the proceedings to him and to interpret or translate his testimony.”

. LSA-C.Cr.P. art. 894(B)(2) provides that "The dismissal of the prosecution shall have the same effect as an acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender.”

. See State v. Garrity, 97-958, pp. 5-6 (La. App. 5 Cir. 1/27/98); 708 So.2d 1096, 1098, where this Court recognized that the guilty plea form only advised the defendant of the right to counsel at trial and noted that the form did not explain the defendant's right to be represented by counsel at all stages of a criminal proceeding; in considering the record as a whole, this Court found that this was insufficient.