ROBERT M. MURPHY, Judge.
|2The State of Louisiana appeals the granting of a motion to quash in favor of defendant, Jose Cesar Mendoza, for two prior DWI convictions in the 24th Judicial District Court, Division “C.”
FACTS AND PROCEDURAL HISTORY
On May 4, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jose Cesar Mendoza, with driving while intoxicated (DWI), fifth offense, in violation of La. R.S. 14:98. The bill of information alleged that on November 23, 2010, defendant willfully and unlawfully operated a motor vehicle while intoxicated after having been previously convicted of violating La. R.S. 14:98 on four previous occasions.
Thereafter, on October 4, 2011, defendant filed a “Motion to Quash” the bill of information, asserting that two of his predicate convictions, the 1997 and 1999 convictions, were obtained in violation of his constitutional rights.[1] On January | ⅞12, *291 2012, defendant filed a memorandum in support of his motion, arguing that the 1997 and 1999 convictions used to charge him as a DWI fifth offender had been previously quashed by Judge Robert A. Pitre, Jr. on July 31, 2001, under case number 01-1468, rendering the doctrine of res judicata applicable to the instant matter.
On February 13, 2012, a hearing was held on the motion to quash and the trial court granted the motion. After the hearing, the State orally moved for an appeal, which was granted on March 29, 2012. The State’s appeal follows.
DISCUSSION
The State argues that the trial court erred in granting defendant’s Motion to Quash, declaring invalid two of the predicate DWI convictions alleged in the bill of information. First, the State submits that the trial court improperly applied the principle of res judicata to this case when it relied on Judge Pitre’s 2001 ruling. The State contends that the trial court erred because the principle of res judicata does not apply to sentence enhancement proceedings. The State further maintains that defendant did not meet his burden of proving an infringement of his rights or a procedural irregularity in the taking of his pleas. Finally, the State asserts that the evidence submitted by the State proves that the predicate pleas were constitutionally obtained.
The defense responds that the trial court properly applied the doctrine of res judicata; alternatively, that when the trial court referenced Judge Pitre’s 2001 rulings, she had independently reviewed the evidence introduced at the earlier hearing and based on that review granted the motion to quash. In his 2011 Motion to Quash, defendant challenged the two predicate DWI guilty pleas on two bases: first that they were obtained without-a lawful, knowing, and intelligent waiver of his rights; and second that in 2001 Judge Pitre granted a motion to quash. In his ^memorandum in support of his motion, defendant argued that these two predicate convictions should be quashed because in 2001, Judge Pitre had previously granted a motion to quash the same two predicate pleas in case number 01-1468, Division “G,” of the 24th Judicial District Court, Parish of Jefferson. Accordingly, defendant argued that the principle of res judi-cata applied.
The first plea was obtained on November 5, 1997, in the 22nd Judicial District Court, Parish of St. Tammany, case number 278468, Division “C.” The second plea was obtained on May 10, 1999, in First Parish Court, Parish of Jefferson, case number F1229145, Division “B.”

Motion to Quash Hearing

At the hearing on defendant’s Motion to Quash, the State introduced five exhibits into evidence.[2] With respect to the 1997 conviction, the exhibits included: the minute entry, bill of information, and transcript from case number 278468. With respect to the 1999 conviction, the exhibits included: the bill of information, minute entry, waiver of rights form, commitment, fingerprints, and transcript from case number F1229145.
*292 The State also introduced Judge Pitre’s 2001 judgment granting defendant’s motion to quash the bill of information based upon the same 1997 and 1999 convictions and defendant’s 2001 memorandum in support of that motion to quash.

Res Judicata

The State submits that the trial court erred in relying on Judge Pitre’s ruling because the principle of res judicata does not apply to sentence enhancement proceedings. The State in effect argues that the trial court must rely on all the evidence- available at the time of the requested enhancement to test the prior pleas.
We agree that the trial judge was not bound by Judge Pitre’s judgment in case number 01-1468 when considering defendant’s Motion'to‘Quash.
In State v. Duplechin, 05-726 (La. App. 5 Cir. 1/31/06), 922 So.2d 655, writ denied, 2006-0475 (La.9/22/06), 937 So.2d 378, this court held that the doctrine of res judicata does not apply to estop the state from using a previously invalidated predicate DWI conviction in a subsequent DWI case. In Duplechin, the defendant' was charged with third offense DWI after a judge had previously declared o.ne of the predicate offenses constitutionally invalid. The trial judge applied res judicata .to exclude the previously quashed predicate offense from use in the current enhancement effort. This Court then reversed, holding that prior DWI convictions do not form any part of the act for which the defendant is being prosecuted. Rather, “the accused is being prosecuted, and may be tried, convicted, and punished, not for the previous offenses, but for the last offense, although the punishment for this last offense is enhanced because of previous convictions.” Id. at 658. The Duple-chin holding applies to the instant facts; res judicata does not apply to exclude previously quashed predicate offenses.
We find, however, that in her ruling that the trial judge did not solely rely upon the principle of res judicata. Rather, she also considered the State’s exhibits in rendering an independent ruling based upon the evidence presented on the motion before her.
The pertinent inquiry shifts to whether the trial court erred in declaring two of defendant’s predicate DWI convictions constitutionally invalid.

Constitutionality of Defendant’s Predicate Pleas

A motion to quash is the proper vehicle to attack the constitutionality of prior convictions used to enhance a DWI charge. State v. Moten, 99-552, p. 2 (La. App. 5 Cir. 11/30/99), 748 So.2d 1210, 1211. The granting of a defendant’s motion to quash the bill of information is a discretionary ruling by the trial court and, absent abuse, the ruling should not be disturbed by the appellate court. State v. | aPayton, 06-1202, pp. 3-4 (La.App. 4 Cir. 2/28/07), 954 So.2d 193, 195 (citing State v. Love, 00-3347, p. 14 (La.5/23/03), 847 So.2d 1198,1208).
A presumption of regularity attaches to prior convictions in multiple offender DWI cases and the burden is on the defendant to show the prior guilty plea is constitutionally deficient. State v. Collins, 04-255, p. 5 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1153, unit denied, 04-2798 (La.3/11/05), 896 So.2d 62. In State v. Balsano, 09-0735, p. 8 (La.6/19/09), 11 So.3d 475, 479 (per curiam), the Louisiana Supreme Court recognized that it has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings, State v. Shelton, 621 So.2d 769 (La.1993), or in habitual offender DWI prosecutions. R.S. 15:529.1; State v. Carlos, 98-1366 (La.7/7/99), 738 *293 So.2d 556.' This line of jurisprudence sets forth the respective burdens of proof when a defendant challenges the use of a predicate conviction for enhancement under the recidivist habitual offender and driving while intoxicated statutes.
The Louisiana Supreme Court’s decision in Carlos applied Shelton’s burden shifting rule to the recidivist provisions of the DWI statute. Carlos established a three-step process for determining the validity of prior DWI guilty pleas for use in enhanced DWI proceedings. The State has the initial burden of proving the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were taken. Id. (citing Carlos, 98-1366 at 6, 738 So.2d 559). If the State meets this initial burden, “the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.” Id. (quoting Carlos, 98-1366 at 6-7, 738 So.2d at 559). If the defendant makes the required showing, the burden reverts to the State to produce a “perfect” Boykin transcript, ie., one “which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned 17in Boykin.” Id. (quoting Carlos, 98-1366 at 7, 738 So.2d at 559 n. 4 and Shelton, 621 So.2d at 775 n. 12). Anything less than a perfect transcript, “such as a guilty plea form or minute entry, will require the trial judge to weigh evidence submitted by both sides and determine whether the defendant’s Boykin rights were prejudiced.” Id. (quoting Carlos, 98-1366 at 7, 738 So.2d at 559).
 In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea; the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. Because a plea of guilty waives these fundamental rights of an accused, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. Id. The record of the plea must show, that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. Galliano, 396 So.2d 1288, 1290 (La.1981). Under Boykin, the decision to plead guilty will not be considered voluntary unless, at the very least, the defendant has been advised of his privilege against self-incrimination, and his rights to a trial by jury and confrontation. State v. Payton, 04-1024, p. 4 (La.App. 5 Cir. 1/11/05), 894 So.2d 362, 365. The record must also show the defendant freely and voluntarily waived those rights. Id.
In Balsano, the court explained that Carlos spoke more broadly about prejudice to Boykin rights because prior DWI convictions used to enhance sentence in many cases, if not most, are misdemeanors offenses as to which the defendant does not have the right to a jury trial, thereby shrinking the three-right rule to two rights. Id., 09-0735 at 9, 11 So.3d at 479-80.
Additionally, whenever a misdemeanor guilty plea is to be used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, it is incumbent upon the trial judge to inform the defendant that by pleading guilty he waived these the privilege against |sself-incrimination and right to confront accusers. State v. Vu, 02-1243, p. 6 (La.App. 5 Cir. 4/8/03), 846 So.2d 67, 71. The trial judge must also ascertain that the accused understands what the plea connotes and its consequences. “While it is preferable for the trial judge to conduct a colloquy to ascertain the validity of the plea, such a colloquy may not be indispensable, as long *294 as the record contains some other affirmative showing to support' the plea.” Id.
In this case, the State bore its initial burden by introducing the five exhibits discussed above. With respect to the 1997 conviction, the State introduced a certified copy of the minute entry and transcript reflecting a guilty plea and that defendant was represented by counsel, Mr. James E. Talley. Regarding the 1999 conviction, the State introduced a certified copy of the minute entry, commitment, transcript, and waiver of rights form indicating a guilty plea and that defendant was represented by counsel, Mr. Arturo S. Vallejo. Consequently, the burden of production shifted to defendant to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the predicate pleas. Carlos, supra at 559.
Defendant sought to meet this burden by arguing that the predicate pleas were obtained without a lawful, knowing, and intelligent waiver of his rights. Defendant also argued that his predicate convictions had fatal defects associated with the pleas. In particular, defendant cited the reasons set forth by Judge Pitre in his 2001 reasons for judgment.
Basically, defendant suggests that defendant’s predicate pleas were obtained without a lawful, knowing, and intelligent waiver of rights by the defendant, whose understanding of the English language was supposedly limited. Defendant further argues that he was not informed of the consequences of entering a guilty plea, namely, enhancement penalties and the possibility of deportation.
|flIn his reasons for judgment, Judge Pitre found defendant’s 1997 and 1999 guilty pleas to be constitutionally infirm for various reasons. First, Judge Pitre noted that defendant was born in Nicaragua and spoke very little English. At the time of defendant’s 1997 plea, defendant was represented by a public defender who did not speak Spanish; thus, the public defender relied on defendant’s daughter to interpret for him.[3] Judge Pi-tre concluded that defendant’s daughter’s English was not any better than defendant’s. Additionally, at the time of the plea, 17 defendants were Boykinized at the same time.[4] Accordingly, Judge Pitre held that neither defendant nor his daughter understood the rights that were explained by the court. With respect to defendant’s 1999 plea, Judge Pitre indicated that defendant was represented by a Spanish-speaking attorney; however, he ruled that the record was not clear as to whether his attorney advised defendant of his rights at the time of the guilty plea colloquy and waiver of rights form. Judge Pitre further noted that the defendant testified, through an interpreter, at the- motion to quash hearing, that he pled guilty because “he was advised to by his attorney who did not have much experience with DWI’s,” and that he was never advised about “enhancements or the possibility of being deported.”
In granting defendant’s Motion to Quash, the trial court ruled in this case as follows:
*295 Let the record reflect that Jose — in case 01-1468, was set before Judge Pitre on July 31, 2001, wherein the defendant filed a motion to quash predicate pleas to DWI before said judge — before Judge Pitre. I’m sorry.
[[Image here]]
It appears at that hearing that testimony was taken regarding Mr. Mendoza’s plea to DWI in the Twenty-Second Judicial District Court in St. Tammany Parish on November 5th, 1997 and his guilty IwPlea in First Parish Court in Jefferson Parish to DWI second offense on May 10th, 1999.
At that hearing Mr. Mendoza testified through an interpreter that he pled guilty because he was advised by his attorney who did not have much experience with DWI’s. Mr. Mendoza also testified at that hearing that he was never advised about enhancements or the possibility of being deported.
Therefore, without anything further from the State, and considering anything further from the State other than the State’s Exhibits 1 through 5, and considering the motion with memorandum in support filed by the defendant, the Court is going to grant the motion to quash Mr. Mendoza’s pleas on May 10th, 1999, and November 5th, 1997.
First, in support of her ruling that the 1997 and 1999 pleas were invalid, the trial judge noted that defendant testified before Judge Pitre that he pled guilty because he was advised by an attorney who “did not have much experience with DWI’s.” We find this alleged deficiency is not a constitutional violation that would render defendant’s predicate pleas unconstitutional for purposes of enhancement. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court. La.C.Cr.P. art. 930. Moreover, the record lacks the evidence to substantiate such a claim. On the record before the appellate court, the defendant has failed to show that (1) counsel’s performance was deficient and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Suggs, 11-64 (La.App. 5 Cir. 12/13/11), 81 So.3d 815, 825-26. Additionally, the transcripts from both predicate pleas indicate that defendant was not threatened, coerced, or intimated into entering the guilty pleas.
Second, the trial court reasoned that the predicate pleas were invalid because defendant was not advised of the enhancement possibilities surrounding his guilty pleas. At the time the predicate offenses were committed, La.C.Cr.P. art. 556.1 provided in pertinent part:
InA. In any criminal case, the court shall not accept a plea of guilty or nolo contendere, without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
[[Image here]]
E. In any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.
The Louisiana Supreme Court, interpreting this article, found that advice regarding penalties for subsequent offenses is not required to be given before a guilty plea is taken, reasoning as follows:
Unlike requirements (l)-(4) contained in La.C.Cr.P. art. 556.1(A) which the judge is directed to give prior to accepting a guilty plea, section (E) simply states that “[i]n any case where a subsequent offense carries an enhanced penalty, the court shall inform the defendant of the penalties for subsequent offenses.” *296 Therefore, advice regarding the penalties for subsequent offenses is not even required to be given before the plea is taken. Thus ..., under the plain language of La.C.Cr.P. art. 556.1, clearly the failure of a trial judge to advise the defendant of the penalties for subsequent offenses under La.C.Cr.P. art. 556.1(E) is not reversible error.
State v. Guzman, 99-1753, pp. 8-9 (La.5/16/00), 769 So.2d 1158, 1163.[5]
In any event, the transcript and minute entry of the 1997 predicate plea from the 22nd Judicial District Court reflects that the trial judge fulfilled this statutory requirement. During the proceeding, the trial judge made the following statements and inquiries pursuant to a group guilty plea colloquy in which defendant participated:
Q: ... One aspect of a plea of guilty in this case is, on you who are charged with D.W.I., a consequence of this plea is if you are charged, convicted or plead guilty to another offense of operating a motor vehicle while intoxicated, anytime within the next ten years, then you could be sentenced to a greater fine and a greater imprisonment. On a |12second offense, you heard me read to Mr. Filby what a second offense entitled.[6] Did you each hear that?
A: [Nod heads affirmatively]
Q: As to a third conviction, it’s a felony and you can get up to five years at hard labor and fine of up to $2,000.00 or both. On a fourth conviction it is a major felony and involves a sentence of between ten years and 30 years and a fine of not more than $5,000.00 or both. So do you understand that as a consequence of this plea if you should mess up and do it again, you could have a greater penalty, a more harsh penalty? Do you understand that?
A: [All defendants indicate affirmatively]
Q: Does anybody not understand that?
A: [No response]
Regarding defendant’s 1999 predicate plea from First Parish Court, the transcript from the proceeding indicates that the trial judge advised defendant of the following:
THE COURT: You also understand that if you are convicted with another DWI within the next ten years, that it would be considered a felony. And he would have to serve from one to five years at hard labor. As him if he knows what hard labor is? Tell him it is Angola State Penitentiary.
THE WITNESS: Yes.
THE COURT: Knowing all of this he still wishes to enter the plea of guilty?
THE WITNESS: Yes.
Also, the waiver of rights form from this plea, which was signed by the trial judge, defendant, and his attorney, contains the following language: “I fully understand *297 that this conviction may be used against me in the future to enhance or increase the sentence or penalties I will receive for any subsequent conviction of the crime of DRIVING WHILE INTOXICATED.” In view of the foregoing, we find that defendant was in fact advised of the enhancement penalties prior to the entering of both guilty pleas.
11sThird, in support of her ruling, the trial judge also reasoned that defendant had not been advised of the possibility of deportation. The State asserts that failing to advise a defendant of the possibility of deportation is not a valid reason for attacking a predicate plea in a DWI proceeding. We agree.
Importantly, we note that defendant’s prior misdemeanor convictions seemingly did not subject him to deportation under 8 U.S.C.A. § 1227(a)(2)(A), because the crimes for which defendant was convicted do not carry a sentence of one year or longer. Defendant, it would seem, is therefore not in jeopardy of being deported for his prior convictions.
Further, in Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), after reviewing a state post-conviction proceeding the United States Supreme Court held that defense counsel engaged in deficient performance by failing to advise defendant that his plea of guilty made him subject to automatic deportation. The Padilla Court held that a criminal defense attorney is obligated to affirmatively and accurately advise a non-citizen client about the deportation consequences of a plea “when the deportation consequences are truly clear.” Id. at 1483.
In State v. Rosales, 11-674, p. 18 (La. App. 5 Cir. 4/24/12), 94 So.3d 36, 47-48, this Court was presented with the argument that the defendant was not advised of the possible immigration consequences of his guilty plea, rendering his plea invalid. This Court found that the defendant was attempting to make arguments regarding his predicate proceedings that should have been raised as a post-conviction relief claim, directly in those predicate cases. Id., 11-674 at p. 19, 94 So.3d at 48. This Court further reasoned that defendant should have raised an ineffective assistance of counsel claim in the predicate in which he was represented. Id. This Court also noted that the prescriptive periods for doing so 114with the predicate convictions had expired, and none of the exceptions to prescription under La.C.Cr.P. art. 930.8 were applicable. Id.
In the instant matter, assuming arguen-do that defendant should have been advised of the possibility of deportation, as in Rosales, it appears that defendant should have raised an ineffective assistance of counsel claim in the predicates, and that the prescriptive periods for doing so have lapsed. Accordingly, we find defendant cannot meet his burden of proving an infringement of his rights or a procedural irregularity from this alleged deficiency.
Finally, it appears that the trial court in this case found the predicate pleas invalid based on defendant’s inability to understand his rights and the consequences of waiving them. Each predicate plea will be addressed in turn.

1997 Guilty Plea

On November 5, 1997, in the 22nd Judicial District Court, Parish of St. Tammany, case number 278468, Division “C,” defendant entered a guilty plea to DWI. Defendant was represented by counsel and defendant’s daughter, Marjorie Mendoza, was sworn in as the interpreter during the guilty plea colloquy.
The 1997 guilty plea transcript indicates that after speaking with defendant in English, the trial judge found that an inter *298 preter would only be necessary when defendant did not understand the questions:
EXAMINATION BY THE COURT:
Q: Please state your full name and your date of birth?
A: Jose Mendoza, Jose Cesar Mendoza, Jose Cesar Mendoza, November 29, '49.
Q: What is your educational [sic]?
A: I finished high school in my country.
THE INTERPRETER:
In my country, Nicaragua.
THE COURT:
1,5I think he does pretty well with English.
DEFENSE ATTORNEY:
Your Honor, once he knows what you are asking him he can answer simply, but I think the translator.
THE INTERPRETER:
He can read a lot in English. He can write, too.
EXAMINATION BY THE COURT:
Q: I tell you what, what we will do is when you don’t understand something, I will use your interpreter. If you do understand it, go on ahead and answer it.
A: Okay, sir.
Q: You can read and write the English language?
A: No, no. A little bit, but I talk sometimes really—
Q: Okay. But you understand what is going on today?
A: [No response]
Q: You understand—
A: Yeah. Now I understand.
Q: Okay. And you are not under the influence of alcohol or any drug at this time?
A: No, sir.
The plea colloquy then proceeded as follows:
Q: Now, you are all waiving or giving up certain rights by pleading guilty. I am going to go over those with you. First of all, does he [the defendant] understand what I went over, the statute? Did you understand that?
THE INTERPRETER:
Yeah. About the thing — he can go through all that if he do that and all this stuff? He understands the payments and all that stuff.
Q: He understands the statutes and the penalties?
A: He understands the penalties, yes.
Q: I was addressing that to Mr. Mendoza.
[1f;Q: ... By pleading guilty there will
be no trial. You are giving up or waiving [the right to plead not guilty and the right to go to trial]. Do you understand those rights?
A: [All defendants indicate affirmatively]
Q: Does anybody not understand those rights?
A: [No response]
Q: Do you waive those rights?
A: [All defendants indicate affirmatively]
Q: Anybody not waive those rights?
A: [No response]
Q: Do you understand that you have a right to a trial and witnesses would be called and you would have a right to a trial? The State would have to prove its case beyond a reasonable doubt. Do you understand that?
DEFENDANT: Okay.
THE INTERPRETER:
Yeah. He understands the rights he has and he can come back, you know, to *299 tell about what happened and all this stuff.
Q: But he is waiving that by doing that. He understands that?
THE INTERPRETER:
Yeah.
Q: ... Do you understand that right of confrontation or cross-examination? A: [All defendants indicate affirmatively]
Q: Does anybody not understand that right?
A: [No response]
Q: ... However, by pleading guilty you are giving up or you are waiving [the right to compulsory process]. Do you understand that right?
A: [All defendants indicate affirmatively]
Q: Does anybody not understand that right?
A: [No response]
Q: Do you waive that right?
|17A: [No response]
Q: I need you all to answer.
A: [All defendants indicate affirmatively]
Q: Does anybody not waive that right? A: [No response]
Q: Does he [the defendant] understand that? Do you understand that, Mr. Mendoza?
A: Yes, sir.
Q: You waive that right?
A: [Nods head affirmatively]
Q: ... Do you understand this right against self-incrimination?
A: [All defendants indicate affirmatively]
Q: Do you waive that right?
A: [All defendants indicate affirmatively]
Q: Does anybody not understand that right or not waive it?
A: [No response]
Q: Do you understand that right, Mr. Mendoza?
A: [Nods head affirmatively] Yes, I understand.
Q: Do you waive it?
A: Yes.
. Q: ... By pleading guilty you are waiving or giving up [the right to an appeal and the right to an attorney]. Do you understand these rights?
A: [All defendants indicate affirmative-
■ ly]
hsQ: Does anybody not understand those rights?
A: [No response]
Q: Do you waive that right?
A: [All defendants indicate affirmatively]
Q: Does anybody not waive that right? A: [No response]
Q: Mr. Mendoza, do you understand those rights?
A: Yes, I understand.
Q: Do you waive those rights?
A: Yeah. [Nods head affirmatively]
The trial judge went on to explain the enhanced penalties for a subsequent DWI conviction, and confirmed defendant’s understanding of the possible consequences. The trial judge asked defendant if anyone had made any promises or inducements, threatened, coerced, or intimidated him to plead guilty. Defendant indicated negatively. The trial judge concluded defendant’s plea was offered freely and voluntarily with an understanding of his rights, the statutes involved, the penalties involved, and the consequences of the plea of guilty.
The transcript indicates that neither the defendant, his attorney nor his interpreter *300 ever interrupted the trial court during the advisal of his Boykin rights to inform the court that he did not understand the questions asked. Additionally, the trial court took the time to address the defendant individually to ensure his understanding of the proceedings; and defendant’s answers were responsive to the questions. We find that the trial judge conducting the colloquy in 1997 was in the best position to ascertain defendant’s ability to understand English, his rights, and the consequences of pleading guilty. In view of the foregoing, we see no reason to disturb that judge’s findings. We find that the trial court judge abused her discretion when she found that the defendant’s inability to understand the English language rendered the defendant unable to knowingly and intelligently plead guilty under the circumstances of that plea.

I,s1999 Guilty Plea

With respect to defendant’s second predicate conviction, defendant entered a guilty plea to DWI, second offense, on May 10, 1999, in the First Parish Court for the Parish of Jefferson, case number F1229145. Defendant was represented by Spanish-speaking counsel Mr. Arturo S. Vallejo, and the minute entry indicates that Felix Reyes acted as the Spanish interpreter during the guilty plea colloquy. The colloquy proceeded as follows:
THE COURT:
Mr. Mendoza, it is my understanding that you now wish to enter a plea of guilty to the charge of driving while intoxicated 2nd offense; is that correct? THE WITNESS:
Yes.
THE COURT:
You understand that you do have a right to go to trial, and if you are convicted a right to appeal my decision? THE WITNESS:
Yes.
THE COURT:
You also have a right to face and cross-examine those people who have accused you of this crime?
THE WITNESS:
Yes, sir.
THE COURT:
You also have a privilege against self-incrimination and no one can force you to take the stand and testify against yourself?
THE WITNESS:
Yes.
THE COURT:
You also understand that no one can force you to enter this plea?
THE WITNESS:
Yes, sir.
THE COURT:
Has anyone forced you to enter this plea?
hnTHE WITNESS:
No.
THE COURT:
You’re pleading guilty because you were in fact driving while intoxicated on November 29,1998?
THE INTERPRETER:
He said, he drunk beer, but the policeman said, he wasn’t drunk.
THE COURT:
Okay. Does he admit that he was driving while intoxicated on November 29,1998?
THE WITNESS:
Yes.
THE COURT:
Does he also understand that he has a right to compel the attendance of witnesses to testify in his behalf?
THE WITNESS:
Yes.
*301 THE COURT:
You also understand that if you are charged and convicted with another DWI within the next ten years, that it would be considered a felony. And he would have to serve from one to five years at hard labor. Ask him if he knows what hard labor is? Tell him it is Angola State Penitentiary.
THE WITNESS:
Yes.
THE COURT:
Knowing all of this he still wishes to enter the plea of guilty?
THE WITNESS:
Yes.
Based on this colloquy, the trial judge found defendant’s plea was knowing, intelligent, free, and voluntary. Defendant’s answers were responsive to the questions asked and neither he, his Spanish-speaking attorney, nor his Spanish interpreter interrupted the judge for clarification or to indicate any misunderstanding. The State also produced a Waiver of Constitutional Rights form, signed by defendant, which reflected that defendant had been advised of his frights and that he knowingly and voluntarily waived them. Furthermore, because defendant had previously pled guilty to DWI, we find that he was familiar with such legal proceedings, and thus possessed an understanding in the instant matter. See State v. Green, 94-0887, p. 15 (La.05/22/95), 655 So.2d 272, 283 (finding that the trial court was justified in relying upon the defendant’s familiarity with the criminal justice system because it tended to show that the custodial interrogation was not an experience foreign to Green, and that prior Boykinizations indicated a repeated exposure to Miranda rights and were relevant); Rosales, supra (finding the defendant’s waiver of counsel valid where defendant pleaded to an uncomplicated DWI misdemeanor offense despite a lack of inquiry into the defendant’s education, mental condition or understanding of his waiver of counsel); and State v. Strain, 585 So.2d 540, 544 (La.1991) (finding crimes of driving while intoxicated are non-complex crimes, and are almost self-explanatory, thus requiring less judicial inquiry to determine if defendant understood his waiver of counsel in the case of a guilty plea).
We find that this trial court abused her discretion when she found that the 1999 predicate conviction was not constitutionally obtained.
Under a totality of the circumstances, and after reviewing the transcripts from both predicate convictions, we find that defendant did not meet his burden of proving an infringement of his rights or irregularity in the taking of his pleas. The State has demonstrated a lawful, knowing, and intelligent waiver of defendant’s rights. As such, we find the trial court erred by granting defendant’s motion to quash. Accordingly, the trial court’s granting of the motion to quash is reversed.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). The review reveals no errors patent in this case.
| ^CONCLUSION
For the reasons assigned herein, the judgment of the trial court granting defendant’s motion to quash is hereby reversed. The case is remanded to the trial court for further proceedings.

REVERSED AND REMANDED

WICKER, J., dissents with reasons.

. The four predicates are: (1) November 5, 1997, docket number 278468, Division "C” of the 22nd Judicial District Court, Parish of St. Tammany; (2) May 10, 1999, docket number *291 F1229145, Division "B” of First Parish Court, Parish of Jefferson; (3) January 25, 2010, docket number F1735795, Division “B” of First Parish Court, Parish of Jefferson; and (4) January 25, 2010, docket number F1825638, Division "B” of First Parish Court, Parish of Jefferson.

. Exhibits One and Two are certified conviction packets for defendant’s 2010 predicate offenses that have not been challenged on appeal.

. Defendant made no claim of bias on the part of the interpreter or that the interpreter mistranslated a portion of testimony to merit consideration of this as a procedural irregularity. State v. Davis, 07-0544 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, writ denied, 08-0380 (La.9/19/08), 992 So.2d 952.

. No prejudice was alleged due to the court’s use of a group plea. A group plea is not in itself invalid. State v. Domino, 10-661 at p. 15 (La.App. 5 Cir. 1/25/11), 60 So.3d 659, 669.

. In response to this holding, in 2001, the legislature amended La.C.Cr.P. art. 556.1, replacing subsection (E) with a harmless error provision that now provides: "Any variance from the procedures required by this Article which does not affect substantial rights of the accused shall not invalidate the plea.” See Acts 2001, No. 243, § 1. Accordingly, as the law stands today, in Louisiana there is no statutory or jurisprudential requirement that prior to entering a guilty plea a defendant must be informed of the possible enhanced penalties for subsequent offenses. See also State v. Brown, 42,188, pp. 26-29 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 749-50, writ denied, 07-2199 (La.4/18/08), 978 So.2d 347; State v. Howard, 05-0809, pp. 3-5 (La.App. 4 Cir. 1/18/06), 924 So.2d 1035, 1037-38.

. Mr. Filby, the only defendant charged as a second DWI offender, was informed of the sentencing range for a DWI second offense.